UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| GLENDA SCHERER, | Case No. |
|---|---|
| *Plaintiff*, | |
| vs. | **COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF** |
| GLADSTONE SCHOOL DISTRICT, BOB STEWART, in his official capacity as Superintendent of Gladstone School District, TRACY OBERG GRANT, in her official capacity as Board Chair, | |
| *Defendants*. | |

## INTRODUCTION

1. Since 2020, the Gladstone School District (the "District") has systematically limited the ability of Glenda Scherer, a District resident and mother of two, to freely express her concerns about the school and its personnel. Specifically, the District:

- Restricted Glenda's ability to communicate with and about the school on social media;

- Enacted a system of unconstitutional prior restraint, requiring Glenda and others to submit their proposed public comments in advance for review by the District;

- Enacted a policy prohibiting Glenda and others from mentioning "any individual district staff member"—a policy it has been interpreted so broadly as to prohibit references by name or title to even board members and the Superintendent; and

- Banned Glenda from even appearing at school board meetings without the permission of the Superintendent.

2. These policies have restrained Glenda's ability to speak openly and effectively both about education in the District and about an allegation of abuse by a staff member against her son. This action seeks to vindicate Glenda's constitutional rights to free expression.

**JURISDICTION AND VENUE**

3. This civil rights action raises federal questions under the First and Fourteenth Amendments to the United States Constitution, pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

4. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

5. This Court is the proper venue for this action under 28 U.S.C § 1391(b) and

6. Or. L.R. 3-2 because the events giving rise to these claims occurred in this judicial district and division, and the parties reside therein.

**PARTIES**

**Plaintiff**

7. Plaintiff Glenda Scherer is an educator and mother of two children who lives within the District.

**The District**

8. The District is a public school district operated under the law of the state of Oregon and a public body as defined in Or. Rev. Stats. §§ 30.260(4) and 174.109. The District is a body corporate under Or. Rev. Stat. § 332.072.

### The Superintendent

9. At all relevant times, Defendant Bob Stewart is and was the Superintendent of the District.

10. As Superintendent, Defendant Stewart is the board's executive officer. Or. Rev. Stat. § 334.225(1). He also serves as the District's clerk. *Id.*

11. Defendant Stewart's duties include authorizing, executing, enforcing, and implementing the District's and the Board's policies and procedures.

### The Board and Board Chair

12. The Gladstone School District school board ("the Board") is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Or. Rev. Stat. § 332.072. The Board has control of the District schools and is responsible for educating children residing in the district. *Id.*

13. Defendant Tracy Oberg Grant ("Grant") is the Chair of the Board and was responsible for enacting, amending, and/or repealing policies that once governed, or currently govern, the speech and expression of those who wish to make public comment at Board meetings ("the Policies"). *Id.*

### FACTUAL BACKGROUND

14. In March 2020, when the District announced that it would transition to remote learning, Glenda was concerned about the impact this action would have on her daughter and special-needs son.

15. She soon began to speak out, utilizing the District's social media pages and board meetings to ask questions and offer criticism.

16. The suppression of Glenda's speech began during a virtual school board meeting in July of 2020. When Glenda submitted a public comment that was critical of the District, it was disregarded during the meeting and excluded from the minutes. Although the Board claimed it would consider her comments and address them later, it never did.

17. Following that July 2020 meeting, the Board engaged in a series of escalating actions to limit Glenda's speech.

<u>Suppression of Speech on Social Media</u>

18. Around September of 2020, the District opened a Facebook group where parents could offer support, ask questions, and receive assistance on school-related issues.

19. But when Glenda tried to post about an Oregon Department of Education program permitting limited in-person instruction, the group's administrators applied the "post approval" feature to her account, prohibiting her comments from appearing unless they received approval. Glenda witnessed others post to the page in real time, and such limitations were not placed on other members of the group, leaving Glenda to assume that the District targeted her for her views.

20. Glenda also received a reprimand regarding her push for in-person instruction, being told that her post was deleted and threatening to remove her from the group:

> **Notes from the Admins**
>
> Glenda, I am removing this post because it is not helping parents. We are all doing our best to make distance learning work. If you cannot be positive and supportive of parents and school staff, you will be removed from the group.

21. Around November 25, 2020, Gladstone temporarily blocked Glenda from interacting with the District's Twitter account.

22. Until at least early February of 2024, Glenda was blocked from "tagging" Gladstone Schools on all three of her Facebook accounts – Glenda.Scherer, OregonKidsFirst and unheardparent. To this day, the District is using the "tag review" feature to prohibit her posts from appearing.

### The Board Restricts Public Speech at Open Meetings

23. Gladstone's School District Policies on "Public Comment at Board Meetings" (the "Policies") ostensibly invite the public "to share comments, ideas and opinions with the Board during designated times on the agenda."[1] In reality, however, the District has restricted Glenda's ability to share views critical of the District.

   I. The Board Prohibits References to Individual Staff Members and has Enforced this Policy Through a System of Unconstitutional Prior Restraint.

24. The Policies include a section regarding "Comments on Staff Members" which states, in relevant part:

---

[1] There appear to be two relevant policies posted on the Board's website: one labeled BDDH-G1, dated March 9, 2022, and one labeled BDDH-R-G1, dated February 9, 2022. *See* https://gladstoneschoolsor.sites.thrillshare.com/documents/school-board-policies/476586. We presume the March 9, 2022 policy is current.

> A person speaking during the designated portion of the agenda for public comment may offer objective criticism of district operations and programs. **The Board will not hear comments regarding any individual district staff member.**

25. The Google Forms template used to submit comments similarly states that "reference to a specific employee or group of employees is prohibited." Likewise, a document titled "Public Participation" provided to meeting participants says "the Board/Committee will not hear complaints concerning specific school personnel . . . Comments of this nature will not be heard."

26. The District has enforced this policy through an unconstitutional system of prior restraint, in which the District requires commentors to submit their full comments in advance for review by the Board and/or District staff.

27. Specifically, in order to register to speak at a public meeting, participants are directed to submit public comments in full to the board and read them out loud rather than speak extemporaneously:[2]

## Public Comment at Gladstone School District Board Meetings

Please use this form to submit your public comments to the Board. Please keep a copy of your submitted comments to read aloud at the Board meeting.

28. This requirement is inconsistent with the Board's written policies, which state only that a speaker must "sign in on the public comment sheet provided,

---

[2] By email dated February 12, 2024, an attorney for the District informed Glenda's counsel that the District would stop any practice of asking public speakers to submit their comment in full prior to the public meeting.

complete and submit the Intent to Speak card to the Board secretary, and submit their name electronically prior to the Board meeting."

29. This pre-meeting submission requirement has been used to censor Glenda on numerous occasions.

30. For example, on January 27, 2021, then-Chair Greg Lind emailed Glenda and demanded that she stick to her "submitted comments," explaining that "extemporaneous speech" is not permitted and that "if a person goes off-script . . . [he] will have to mute them."

31. Around January 12, 2022, Glenda asked to speak at a Board meeting without submitting her full comments in advance. By email, then-chair Steve Stewart replied: "Unfortunately since you do not wish to follow the set procedures and submit your comments ahead of time, I regret to inform you that I cannot allow you to speak."

32. In November of 2023, Glenda signed up to speak at an upcoming Board meeting to express concerns about the qualifications and transparency of school staff members and the hiring process. She met the Board's requirements for speaking at the meeting, including filling out a comment form at least five hours prior to the start of the meeting. Just before she spoke, however, she was told that her comment was not permissible because she could not mention any current or former school employee by name.

33. In January of 2024, Glenda was prohibited from discussing the District's failure to discipline an employee who was investigated for abusing her son, and who

7

reportedly screamed profanities at her offsite. By email, Defendant Grant suggested that Glenda "edit" her comment, informing Glenda that she was not permitted to even reference a school employee by title or refer to any events that, in the opinion of the Chair, did not "occur during regular business hours" and "have no bearing on school buildings or property." When Glenda attempted to express concerns about the restrictions on her First Amendment rights and attempted to read her comment at the meeting, the Chair temporarily stopped the meeting to prohibit Glenda from speaking.

34. Glenda has been informed by Board members that the Board interprets the prohibition on "comments regarding any individual district staff member" to bar her from even referencing the Superintendent or Board members.

35. Both the written Policies and the Board's prior approval requirement are being applied inconsistently. For example, while Glenda has been held to strict compliance, compliance has been waived for other speakers, including at the November 8, 2023 and December 13, 2023 Board meetings.

36. In addition, the prohibition on "comments regarding any individual district staff member" is applied only to restrict speech that is critical of a district staff member. Indeed, the Board minutes are replete with positive and neutral comments regarding staff members, in connection with personnel decisions and in a regular portion of the meetings reserved for "recognition of students, staff and/or public."

### The Board Bans Glenda from School Board Meetings Unless She Gets Prior Approval to Attend

37. In January of 2024, Glenda received a directive from the Superintendent banning her from attending school board meetings and workshops on school property unless she received prior approval from the Superintendent's Office.

38. After receiving a demand letter from Glenda's counsel, the District stated through counsel that it is willing to rescind the January 2024 directive, but threatened to re-implement it if Glenda did not treat Board members with "respect." No explanation of what "respect" meant was provided.

### CLAIMS

#### Count I
FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH, 42 U.S.C. § 1983
FACIAL CHALLENGE TO THE POLICIES

39. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

40. The First Amendment, by operation of the Fourteenth Amendment, protects the public's right to speak at school board meetings "when the board sits in public meetings to conduct public business and hear the views of citizens." *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 174–76 (1976).

41. "Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991). *See also Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Government

9

regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). Indeed, such regulations of speech inhibit the "free flow of ideas and opinions on matters of public interest and concern" that lies at "the heart of the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U. S. 46, 50 (1988).

42. Defendants' policy forbidding the mention of former or current employees discriminates on the basis of content. The First Amendment protects the right of the public to criticize school officials, school employees, and members of the Board, even if the Defendants do not wish to hear such criticisms.

43. Accordingly, the Policies improperly prohibit viewpoints and opinions regarding topics relevant to the District and properly before the Board.

44. This prohibition is not a valid time, place, or manner restriction nor was it designed to determine the boundaries of the forum. Rather, the Policies suppress opinions and viewpoints that Defendants disagree with and stifle all criticism of District employees.

45. By enforcing the Policies, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

46. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. As such, Plaintiff is entitled to damages, including nominal damages, declaratory relief, and preliminary and permanent injunctive relief against continued enforcement of the Policies, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

## Count II
FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO THE POLICIES' PROHIBITION ON REFERENCING STAFF MEMBERS

47. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

48. All of Plaintiff's public speech at Board meetings is fully protected by the Free Speech Clause of the First Amendment.

49. As applied against Plaintiff, the Policies' prohibition on mentioning the names of school personnel during public comments also violate Plaintiff's First Amendment rights because they are not reasonable in light of the public comment period's purpose. Discussing matters pertaining to the school and its operations necessarily requires referencing individuals who work or have worked for the District.

50. What's more, in practice, the Board does not even allow the mention of titles of school personnel, thereby silencing any discussion, criticism, or questioning of school personnel and operations by Plaintiff. It does, however, permit references to staff in non-critical contexts.

51. Because the prohibition is not enforced to prohibit positive references to staff members, it is enforced in a manner that discriminates against speakers with a critical viewpoint of staff members and favors those with a positive or neutral viewpoint of staff members.

52. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. As such, Plaintiff is entitled to damages, including nominal damages, declaratory relief, and

preliminary and permanent injunctive relief against continued enforcement of the Policies, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

### Count III
FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO THE POLICIES' USE OF PRIOR RESTRAINT

53. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

54. The requirement for a speaker to submit their comment for prior approval by the government is a patently unconstitutional policy of prior restraint. *Burch v. Barker*, 861 F.2d 1149, 1155 (9th Cir. 1988) (striking down a school's preapproval requirement for student speech and finding that such communications "cannot be subjected to regulation on the basis of undifferentiated fears of possible . . . embarrassment to school officials").

55. Indeed, prior restraints "bear[] a heavy presumption of unconstitutionality . . . . A system of prior restraint is in many ways more inhibiting than a system of subsequent punishment: It is likely to bring under government scrutiny a far wider range of expression; it shuts off communication before it takes place." *Id.* Prior restraints "are permissible in only the rarest of circumstances, such as imminent threat to national security." *Id.*

56. Requiring each speaker to submit their full comment ahead of time and barring Plaintiff from making any deviations from the written comment each constitute a prior restraint on speech. This is compounded by the fact that the

Board has allowed other speakers, but not Plaintiff, to deviate from their written comments.

57. Likewise, requesting that a member of the public change or revise their comment to be approved to speak, as the Board did here, is a blatant unconstitutional prior restraint.

58. By enforcing the Policies, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

59. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, declaratory relief, and preliminary and permanent injunctive relief against continued enforcement of the Policies and requirement to submit a comment for prior approval, as well as attorneys' fees and expenses pursuant to 42 U.S.C. § 1983.

## Count IV
FIRST AMENDMENT RIGHT TO PETITION, 42 U.S.C. § 1983
FACIAL CHALLENGE TO THE POLICIES

60. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

61. "The Supreme Court has described the right to petition as among the most precious of the liberties safeguarded by the Bill of Rights and intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. It is cut from the same cloth as the other guarantees of the First

Amendment, and is an assurance of a particular freedom of expression." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (cleaned up).

62. School board meetings with public comment periods constitute a forum that enable the public to petition government officials in accordance with their First Amendment rights.

63. The Policies' prohibition on mentioning school personnel by name violates the First Amendment right to petition on its face by impermissibly prohibiting and limiting petitions based on content and viewpoint.

64. Such a prohibition is not a valid time, place, or manner restriction nor was it designed to determine the boundaries of the forum. Rather, it suppresses petitions for redress, particularly when Defendants disagree with dissenting or critical viewpoints and do not want their authority questioned.

65. By enforcing the Policies, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

66. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, declaratory relief, and preliminary and permanent injunctive relief against continued enforcement of the Policies, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

## Count V
### FIRST AMENDMENT RIGHT TO PETITION, 42 U.S.C. § 1983
### AS-APPLIED CHALLENGE TO THE POLICIES

67. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

68. All of Plaintiff's public speech at public Board meetings is fully protected by the First Amendment right to petition the government for redress of grievances.

69. As applied against Plaintiff, the Policies' prohibition on personally addressing the names of former or current staff members violates the First Amendment right to petition by impermissibly discriminating against Plaintiff based on content and viewpoint. Additionally, as applied against Plaintiff, the Board prohibits even mentioning the title of former or current staff positions, further prohibiting the right to petition.

70. As applied against Plaintiff, the Policies' prohibition on personally addressing the names or titles of former or current staff members also violates Plaintiff's First Amendment rights because these prohibitions are not reasonable in light of the public comment period's purpose, nor are they a reasonable time, place, or manner restriction. Petitioning a Board for redress will necessarily require naming names or titles so the Board can understand what the speaker is talking about.

71. By enforcing the Policies against Plaintiff, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

72. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, declaratory, preliminary and permanent injunctive relief against continued enforcement of the Policies, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

### Count VI
FIRST AMENDMENT RIGHT OF FREE SPEECH AND PETITION, 42 U.S.C. § 1983
DISCRIMINATORY ADMISSION TO SCHOOL BOARD MEETINGS

73. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

74. The public has a right to access to school board meetings on an equal basis to petition their elected officials, and without regard to the viewpoints that they might express during the meetings. The District must allocate meeting access in a manner that is neutral with respect to people's viewpoints.

75. Defendants violated Plaintiff's First Amendment rights when they banned Plaintiff from attending Board meetings in person. A government agency cannot preemptively ban members of the public from attending public meetings. Public comment is essential to the betterment of public schools. The First Amendment protects this vital right of the people to publicly voice their concerns and prohibits governing boards from censoring speech they disagree with or would rather not hear.

76. The directive from Defendant Stewart banning Plaintiff from attending school board meetings and workshops on school property unless she received prior approval from the Superintendent's Office violates Plaintiff's First Amendment

16

right to free speech and assembly and is unconstitutional prior restraint. Prior restraint is "a regulation of expression aimed at suppressing speech before it is uttered" and "bear[s] a heavy presumption of unconstitutionality." *Burch*, 861 F.2d at 1155.

77. In addition, Defendants' insistence that such a restriction can be brought back if Plaintiff does not treat them "with respect" is an impermissibly vague restraint on her speech.

78. By preemptively prohibiting Plaintiff from attending school board meetings in person, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

79. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, declaratory relief, and preliminary and permanent injunctive relief against future enforcement of the ban on attendance, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

### Count VII
RIGHT OF FREE SPEECH AND PETITION,
FIRST AND FOURTEENTH AMENDMENTS, 42 U.S.C. § 1983
RESTRICTION FROM TAGGING THE DISTRICT ON SOCIAL MEDIA

80. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

81. First Amendment protections "apply no less to the vast democratic forums of the Internet than they do to the bulletin boards or town halls of the corporeal world." *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1185 (9th Cir. 2022) (cleaned

up). Indeed, "[w]hen state actors enter that virtual world and invoke their government status to create a forum for such expression, the First Amendment enters with them." *Id.*

82. The District created a designated public forum when it made a forum on the social media platform, Facebook, "available for use by the public" and "ha[d] no policy or practice of regulating the content posted to that forum." *Id.* at 1179 (finding that a school district's Twitter page constituted a public forum). When the District restricted Plaintiff's ability to tag the District on social media, it violated Plaintiff's First Amendment right to free speech and inhibited her ability to engage in the online forum created by the District.

83. By restricting Plaintiff's ability to tag the District on social media, Defendants, under color of law, deprive Plaintiff of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

84. Accordingly, Plaintiff is injured in violation of 42 U.S.C. § 1983. Plaintiff is therefore entitled to damages, including nominal damages, declaratory, preliminary and permanent injunctive relief against continued enforcement and maintenance of tagging restrictions, as well as attorney fees and expenses pursuant to 42 U.S.C. § 1983.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court provides the following relief:

A. Preliminary and permanent injunctive relief enjoining Defendants, their agents, employees, officers, and all other persons in active concert or

participation with them from enforcing the Policies' prohibition on mentioning former or current school personnel, either in name or title, at Board meetings;
.
B. A judgment declaring:

1. Both facially and as applied, the Policies' prohibition on mentioning former or current school personnel, either in name or title, violates the First Amendment rights to free speech and to petition and the Fourteenth Amendment;

2. As applied, the Board's requirement for a speaker to submit their comment for prior approval by the government is an unconstitutional policy of prior restraint in violation of the First and Fourteenth Amendments;

3. Defendants' action of banning Plaintiff from in person school board meetings violates Plaintiff's First Amendment right to free speech and right of access, and violates the Fourteenth Amendment; and

4. Defendants' action of restricting Plaintiff from tagging the District on social media violates Plaintiff's First and Fourteenth Amendment rights.

C. An award of nominal damages for Defendants' violations of Plaintiff's constitutional rights;

D. An award of attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law;

E. Any other relief this Court may grant in its discretion.

Dated: February 26, 2023

                                        Respectfully submitted,
                                         *s/ Luke D. Miller*

Luke D. Miller
Miller Bradley Law, LLC.
1567 Edgewater St. NW
PMB 43
Salem, OR 97304
luke@millerbradleylaw.com


Dean McGee (*Pro Hac Vice to be filed*)
dmcgee@libertyjusticecenter.org
Noelle Daniel (*Pro Hac Vice to be filed*)
ndaniel@libertyjusticecenter.org
Liberty Justice Center
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Phone: 312-637-2280

*Attorneys for Plaintiff*